United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL TALCOTT CURRIER, et al., | No. C 04-03300 SI |
| Plaintiffs, | **ORDER GRANTING MOTIONS TO DISMISS BY DEFENDANTS HOLZ, DEMERLY, HAAS AND METROFI** |
| v. | |
| ROBERT CHOW, et al., | |
| Defendants. | |

Now before the Court are motions to dismiss brought by defendants Otto Holz, Paul Demerly, Chuck Haas and MetroFi, Inc. All defendants seek dismissal of plaintiffs' Third Amended Complaint, without leave to amend. Pursuant to Local Rule 7-1(b), the Court finds the motions suitable for resolution without oral argument and therefore VACATES the hearing set for November 4, 2005. For the reasons set out below, the Court GRANTS defendants' motions.

## BACKGROUND

On August 12, 2004, plaintiffs[1] filed this action against ten named defendants and an unknown number of "Doe" defendants. The original complaint was 88 pages long, and consisted of 500 paragraphs of allegations in support of its eighteen causes of action. By order dated January 26, 2005, the complaint was dismissed with

---

[1] Individual plaintiff Paul Talcott Currier, and corporate defendants Communication Bridge USA, Inc. and Communication Bridge Global, Inc. Mr. Currier filed the complaint pro se, purporting to represent both himself and the corporate plaintiffs. In March, 2005, attorney Jeffrey Marc Weiss appeared on behalf of the corporate plaintiffs. Thus, since March, 2005, at least some plaintiffs have had counsel in this action.

leave to amend on the grounds, inter alia, that it violated Rule 8 of the Federal Rules of Civil Procedure.[2] Plaintiffs' First Amended Complaint was filed on February 11, 2005 and their Second Amended Complaint was filed July 15, 2005. On August 12, 2005, plaintiffs filed their Third Amended Complaint, which is the subject of the current motion.

The Third Amended Complaint names twenty-three defendants. It is 81 pages long and contains 409 paragraphs of allegations in support of twenty-one causes of action. It alleges forty-six separate RICO conspiracies involving the worldwide telecommunications industry. Its conspiracy allegations span the entire globe, and include, among numerous others, allegations involving "the manufacture of a cutting-edge technology Trimaran boats [sic]," the "plunder" of the Philippine treasury by former president Ferdinand Marcos, and "marriage fraud" committed by Currier's ex-wife. *See* Pl. Compl. at ¶¶ 87, 74, 73. In addition to the twenty-three named defendants, plaintiffs have named sixteen "relevant non-parties," all of whom are former defendants to the action. In a representative example of the sheer magnitude of plaintiffs' claims, plaintiffs request permission to sue on behalf of the people of the United States, because "the Attorney General clearly will not do so." Pl. Compl. at ¶ 13.

The complaint is long, rambling, and extraordinarily difficult to follow. The gist of the complaint appears to be that, in 1995, Currier developed a method of wireless internet voice communications that would have been faster and less expensive than what was then available. Pl. Compl. at ¶ 66-69. Currier believed this new invention had the potential to provide affordable wireless internet and telephone products to the entire world, including to remote areas of developing nations. *Id.* In 1999, he founded corporate plaintiff Communication Bridge Global, Inc. ("CBG"), conceivably to carry out his plan, although the complaint does not make this

---

[2] See Order Granting Defendants' Motion to Dismiss with Partial Leave to Amend; and Vacating Hearing, dated January 26, 2005, at pages 3-4: "Under Fed. R. Civ. P. 8(a), a complaint must contain 1) a short and plain statement of the court's jurisdiction, 2) a short and plain statement of the claim showing that the plaintiff is entitled to relief, and 3) a demand for judgment for the relief sought by plaintiff. Plaintiff has not met this requirement in his complaint. The complaint is 88 pages long, is rambling, contains information about plaintiff's business strategies and his divorce which is not relevant to any apparent legal theory, and fails to identify the basis for claimed federal jurisdiction. The Court is unable at this juncture to determine what plaintiff actually claims and whether he has properly stated any claim against any of the defendants. Plaintiff's current pleadings are too confusing and too long to allow a proper evaluation of the separate claims made against each separate defendant. Neither the defendants, nor the Court, is obliged to rummage through the present pleadings to try to identify what, if any, claims have merit. [¶] Because of plaintiff's failure to meet the requirements of Rule 8, the Court DISMISSES the complaint in its entirety with leave to amend as to all defendants except MCI."

clear. *Id.* at ¶ 70-71. Currier's other company, Communication Bridge USA, Inc. ("CBUSA"), was later formed as a subsidiary of CBG. *Id.* The complaint then describes a vast network of conspiracies involving the Philippine government, Currier's ex-wife, and the entire telecommunications industry, the goal of which was to prevent Currier's idea from coming to fruition, to destroy his companies, and to steal his intellectual property.

Four of the defendants have now brought motions to dismiss the Third Amended Complaint. They all contend that the complaint's lengthy and rambling allegations fail to comply with the minimal pleading standards established by the Federal Rules of Civil Procedure. The Court agrees.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . , (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed. R. Civ. P. 8(a). Under Rule 8(e), "each averment of a pleading shall be simple, concise, and direct." The purpose of these requirements is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957). In practical terms, the requirements of Rule 8 ensure that a defendant will be able to respond to the allegations against him. *Edwards v. N. Am. Rockwell Corp.*, 291 F. Supp. 199, 211 (C.D. Cal. 1968) ("Rule 8(a)(2) envisions the presentation of factual allegations of sufficient clarity and certainty to enable defendants to determine the basis of plaintiff's claim and to formulate a responsive pleading."). They also help frame the lawsuit to guide case management and discovery. *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).

## DISCUSSION

The Court finds that plaintiffs' complaint is not well-pled. Its convoluted allegations against a litany of defendants and "relevant non-parties," which span 81 pages and 409 paragraphs, are simply too confusing to give the defendants fair notice of the claims against them. Although the complaint provides a fair amount of detail concerning the telecommunications industry, the failure of the federal government to protect consumers from monopolies, and other "background" facts, the complaint fails to provide any detail when it discusses the

3

actual wrongs the named defendants allegedly committed. Instead, it resorts to sweeping, conclusory allegations of vast conspiracies. In short, the Ninth Circuit's description of a complaint in a similar case applies fully here: "Despite all the pages, requiring a great deal of time for perusal, one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *McHenry*, 84 F.3d at 1178.

Plaintiffs concede that the complaint is lengthy, but argue that the length is necessary because the factual background of this case is complicated. In defense of their complaint, plaintiffs cite to *Washington v. Baenziger*, 673 F. Supp. 1478 (N.D. Cal. 1987), and *Velasquez v. Senko*, 643 F. Supp. 1172 (N. D. Cal. 1986). Neither of these cases can save the current complaint.

*Washington* involved a professional baseball player who sued his investment advisor for fraud, negligence, and breach of fiduciary duty, among other claims. His original complaint was 86 pages long, contained 33 causes of action against 21 defendants, and attached fifteen pages of exhibits. *See Washington v. Baenziger*, 656 F. Supp. 1176, 1177 (N.D. Cal. 1987). After this complaint was dismissed under Rule 8(a), the plaintiff filed an amended complaint. In the amended complaint, the plaintiff "divided the defendants into relevant groups and specified the causes of action against each group. He also added dates to the allegations of fraud, and provided greater specificity to the alleged fraudulent acts of each defendant or group of defendants." *Washington*, 673 F. Supp. at 1482. Based upon these changes, the court held that the complaint complied not only with Rule 8(a), but also with the heightened pleading requirement of Rule 9(b). *Id.*

Unlike in *Washington*, plaintiffs here have not taken steps to clarify the allegations in their complaint. They have not "divided the defendants into relevant groups," nor have they "provided greater specificity to the alleged fraudulent acts." Rather, plaintiffs have continued to indiscriminately bring vague and conclusory allegations against the defendants as a single group.

Plaintiffs also cite *Velasquez v. Senko*, 643 F. Supp. 1172 (N. D. Cal. 1986), for the proposition that a complaint may include a great amount of detail and still be in compliance with Rule 8. *Velasquez* concerned a civil rights lawsuit against the Immigration and Naturalization Service, Border Patrol, and local police. *Id.* at 1174. The court rejected a motion to dismiss under Rule 8(a), finding that "the instant Complaint in no way

4

compares to . . . amorphous pleadings; it describes in considerable detail seven separate operations of the INS and Border Patrol that were allegedly planned or executed by certain of the defendants and that allegedly violated specified statutory and constitutional rights." *Id.* at 1178-79.

Plaintiffs' reference to *Velasquez* misses the deficiency in their complaint. Unlike the complaint in *Velasquez*, plaintiffs' complaint does not contain "considerable detail" about any of the charges against the defendants. The only details in the complaint are its juggling of myriad names as it describes – in almost no detail – the forty-six conspiracies it alleges. The substance of plaintiffs complaint consists of only conclusory allegations made with broad brushstrokes against the defendants. It is wholly lacking in the details that the parties, and the Court, need to understand the precise nature of the claims against the defendants.

As the following discussion demonstrates, none of the allegations against Holz, Demerly, Haas, or MetroFi suffices to provide them with fair notice of the claims against them.

### 1. Claims against Otto Holz

Plaintiffs' claims against Otto Holz do not satisfy the standard for notice pleading under Rule 8. The complaint contains twenty-one causes of action, nineteen of which are brought against "all defendants," including Holz. The charges against Holz are based upon the Sherman Act, the Clayton Antitrust Act, the California Cartwright Act, the Racketeer and Corrupt Organizations Act, and other California statutory and common law.

It is extremely difficult to divine the precise allegations that apply to Holz, however, because not a single one of plaintiffs' enumerated causes of action specifically mentions his name. In addition, many of plaintiffs' claims against Holz simply have no relation to the complaint's factual allegations against him. For example, the complaint alleges that Holz violated the antitrust laws, and breached written, oral, and implied contracts. *See, e.g.*, Pl. Compl. at ¶¶ 218-53, 313-35. Yet the factual allegations against Holz contain nothing that would support these claims.

The breadth of the complaint, along with its vague and conclusory allegations against Holz, simply do not provide Holz with proper notice of the charges against him.[3] For this reason, the Court GRANTS Holz's

---

[3]Holz makes much the same point in his opposition papers, at 4:8-10.

motion to dismiss.

### 2. Claims against Paul Demerly

For similar reasons, the Court GRANTS defendant Demerly's motion to dismiss. Plaintiffs' complaint specifically names Demerly in only three paragraphs:

> 31. Defendant PAUL DEMERLY ("DEMERLY") is a resident of California and a member of the Golden Gate University faculty and a participant with ROBERT CHOW in a fraud on the California Public Utilities Commission ("CPUC").
>
> * * *
>
> 103. A further distinct **Seventeenth (17th) RICO Conspiracy** committed by both of the CHOWs, the WONG FAMILY REVOCABLE TRUST, DEMERLY, SCHNEIDER, and SPOHN, involved fraud of the California Public Utilities Commission ("CPUC"), as documented then-CPUC staff lawyer, Carol Dumond and forensic auditor Kevin Nakamura. The fraud on the CPUC began in January of 2001, and was detected by the CPUC in the Chapter 11 proceedings, which CHOW and McINTOSH initiated by their False US Bankruptcy filing for CBUSA before Judge Montali.
>
> * * *
>
> 168. . . . CHO was a part of the RICO Conspiracy No. 17 to defraud the CPUC, along with DEMERLY, the named WONG defendants, and other on the Golden Gate University telco educational faculty, as well as key venture capitalist who Plaintiffs believe funded HAAS and METROFI with 150 million USD.

Pl. Compl. at ¶ 31, 103, 168.

From these bare allegations, plaintiffs bring nineteen causes of action against Demerly, none of which refer to him in any way. Plainly, these broad and conclusory allegations are insufficient to provide Demerly with notice of the charges against him. Thus, the Court GRANTS Demerly's motion to dismiss.

### 3. Claims against Chuck Haas and Metrofi

According to the complaint, Chuck Haas is "the founder of both defendant COVAD and defendant METROFI." Pl. Compl. at ¶ 20. The complaint describes MetroFi as "a Delaware corporation doing business in California, providing wireless telecom services." Pl. Compl. at ¶ 21.

The motion of these defendants presents a closer question than the motions of Holz and Demerly, because there are some allegations against Haas and MetroFi that are somewhat decipherable. Although the vast majority of references to Haas and MetroFi are only passing commentary, Paragraphs 115 and 180 appear to allege that MetroFi was established, with the help of Haas, as a vehicle to misappropriate intellectual

6

property that Currier had developed:

> 115. In May of 2002, the executive team of COVAD [which apparently includes Haas] continued in an ongoing continuity of conduct and action and executed **Rico Conspiracy Number Thirty (30)**, whereby they incorporated a new California corporation known as METROFI in order to execute the business plans, designs, and technical processes taught by CURRIER to CHOW, who in turn, illegally breached his (CHOW's) contract with Plaintiffs and divulged all this intellectual property of Plaintiffs to the COVAD executive team and operations groups, as a component to this conspiracy.
>
> \* \* \* \*
>
> 180. May of 2002, METROFI incorporated and sought to execute CBUSA and CBG's wireless VoIP [Voice over IP] design. CHOW was involved in the founding of METROFI to misappropriate the intellectual property of CBUSA, CBG, and CURRIER. HAAS, founder of COVAD, BROBECK, COVAD CO., COVAD, INC., FISH, SPOHN and LAZEROW were all similarly involved in the attempt to misappropriate the intellectual property of Plaintiffs, in continuity of ongoing acts from 1999 forward, which continues to this day, and included funding by SBC.

Pl. Compl. at ¶ 115, 180. In addition, plaintiffs' twelfth, thirteenth, fourteenth, and fifteenth causes of action explicitly name Haas and MetroFi. These causes of action all involve breach of contract or intentional interference with economic relationship, and all allege that "[t]hese breaches of contract were done at the direction and/or with the assistance of HAAS and METROFI."

Thus, in divining plaintiffs' claims against Haas and MetroFi, there is slightly more substance than in the case of Holz or Demerly. Nonetheless, "[t]he propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." *McHenry*, 84 F.3d at 1179. Dismissal under Rule 8 is not a commentary on the merits of a complaint, but a recognition of the practical necessities of litigation. As the Ninth Circuit noted in *McHenry*:

> The judge wastes half a day in chambers preparing the "short and plain statement" which Rule 8 obligated plaintiffs to submit. He must then manage the litigation without knowing what claims are made against whom. This leads to discovery disputes and lengthy trials, prejudicing litigants in other case [sic] who follow the rules, as well as defendants in the case in which the prolix pleading is filed.

*McHenry*, 84 F.3d at 1180. The complaint in *McHenry* was only fifty-three pages long, consisting, as does the complaint in this case, of "'narrative ramblings' and 'storytelling or political griping.'" *Id.* at 1176. Other courts have found similar complaints deserving of dismissal. *See, e.g.*, *Ciralsky v. CIA*, 355 F.3d 661, 669 (D.C. Cir. 2004) (district court's decision to strike a 119-page, 367-paragraph complaint was "hardly a harsh judgment," and district court did not err in dismissing 61-page, 105-paragraph first amended complaint); *Lonesome v. Lebedeff*, 141 F.R.D. 397 (E.D.N.Y. 1992) (dismissing 63-page, 452-paragraph complaint

7

under Rule 8).

The allegations plaintiffs seem to be bringing against Haas and MetroFi do not appear to be particularly complicated. They could have been brought in a far simpler complaint of much more limited scope. Instead, plaintiffs have chosen to bring those claims in a sweeping indictment of the global telecommunications industry and of the individuals against whom Currier appears to hold a grudge. Such pleading is simply not consistent with the requirements of the Federal Rules of Civil Procedure. *Cf. McHenry*, 84 F.3d at 1178 (expressing disapproval of complaint that seemed "designed to provide quotations for newspaper stories").

**4.     Leave to Amend**

Plaintiffs request leave to amend their complaint to correct the deficiencies identified by the Court. This action, however, has proceeded for over a year, and plaintiffs have already had four opportunities to submit an adequate complaint. It is abundantly clear to the Court that plaintiffs are not interested in formulating their claims in a simple, concise fashion. Rather, they are more interested in lengthy ramblings and conspiracy theories about all those who have wronged them in the past.

In this Court's August 9, 2005, order granting plaintiffs leave to file a third amended complaint, the Court explicitly informed plaintiffs that no further amendments would be allowed. Plaintiffs have given the Court no reason to depart from this decision. Thus, plaintiffs' request for leave to amend is DENIED.

///

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS Holz's, Demerly's, and Haas's and MetroFi's motions to dismiss with prejudice (Docket Nos. 194, 197, and 208).

**IT IS SO ORDERED.**

Dated: November 2, 2005

SUSAN ILLSTON
United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL TALCOTT CURRIER, et al., | No. C 04-03300 SI |
| Plaintiffs, | **ORDER GRANTING MOTIONS TO DISMISS BY DEFENDANTS HOLZ, DEMERLY, HAAS AND METROFI** |
| v. | |
| ROBERT CHOW, et al., | |
| Defendants. | |

Now before the Court are motions to dismiss brought by defendants Otto Holz, Paul Demerly, Chuck Haas and MetroFi, Inc. All defendants seek dismissal of plaintiffs' Third Amended Complaint, without leave to amend. Pursuant to Local Rule 7-1(b), the Court finds the motions suitable for resolution without oral argument and therefore VACATES the hearing set for November 4, 2005. For the reasons set out below, the Court GRANTS defendants' motions.

**BACKGROUND**

On August 12, 2004, plaintiffs[1] filed this action against ten named defendants and an unknown number of "Doe" defendants. The original complaint was 88 pages long, and consisted of 500 paragraphs of allegations in support of its eighteen causes of action. By order dated January 26, 2005, the complaint was dismissed with

---

[1] Individual plaintiff Paul Talcott Currier, and corporate defendants Communication Bridge USA, Inc. and Communication Bridge Global, Inc. Mr. Currier filed the complaint pro se, purporting to represent both himself and the corporate plaintiffs. In March, 2005, attorney Jeffrey Marc Weiss appeared on behalf of the corporate plaintiffs. Thus, since March, 2005, at least some plaintiffs have had counsel in this action.

leave to amend on the grounds, inter alia, that it violated Rule 8 of the Federal Rules of Civil Procedure.[2] Plaintiffs' First Amended Complaint was filed on February 11, 2005 and their Second Amended Complaint was filed July 15, 2005. On August 12, 2005, plaintiffs filed their Third Amended Complaint, which is the subject of the current motion.

The Third Amended Complaint names twenty-three defendants. It is 81 pages long and contains 409 paragraphs of allegations in support of twenty-one causes of action. It alleges forty-six separate RICO conspiracies involving the worldwide telecommunications industry. Its conspiracy allegations span the entire globe, and include, among numerous others, allegations involving "the manufacture of a cutting-edge technology Trimaran boats [sic]," the "plunder" of the Philippine treasury by former president Ferdinand Marcos, and "marriage fraud" committed by Currier's ex-wife. *See* Pl. Compl. at ¶¶ 87, 74, 73. In addition to the twenty-three named defendants, plaintiffs have named sixteen "relevant non-parties," all of whom are former defendants to the action. In a representative example of the sheer magnitude of plaintiffs' claims, plaintiffs request permission to sue on behalf of the people of the United States, because "the Attorney General clearly will not do so." Pl. Compl. at ¶ 13.

The complaint is long, rambling, and extraordinarily difficult to follow. The gist of the complaint appears to be that, in 1995, Currier developed a method of wireless internet voice communications that would have been faster and less expensive than what was then available. Pl. Compl. at ¶ 66-69. Currier believed this new invention had the potential to provide affordable wireless internet and telephone products to the entire world, including to remote areas of developing nations. *Id.* In 1999, he founded corporate plaintiff Communication Bridge Global, Inc. ("CBG"), conceivably to carry out his plan, although the complaint does not make this

---

[2] See Order Granting Defendants' Motion to Dismiss with Partial Leave to Amend; and Vacating Hearing, dated January 26, 2005, at pages 3-4: "Under Fed. R. Civ. P. 8(a), a complaint must contain 1) a short and plain statement of the court's jurisdiction, 2) a short and plain statement of the claim showing that the plaintiff is entitled to relief, and 3) a demand for judgment for the relief sought by plaintiff. Plaintiff has not met this requirement in his complaint. The complaint is 88 pages long, is rambling, contains information about plaintiff's business strategies and his divorce which is not relevant to any apparent legal theory, and fails to identify the basis for claimed federal jurisdiction. The Court is unable at this juncture to determine what plaintiff actually claims and whether he has properly stated any claim against any of the defendants. Plaintiff's current pleadings are too confusing and too long to allow a proper evaluation of the separate claims made against each separate defendant. Neither the defendants, nor the Court, is obliged to rummage through the present pleadings to try to identify what, if any, claims have merit. [¶] Because of plaintiff's failure to meet the requirements of Rule 8, the Court DISMISSES the complaint in its entirety with leave to amend as to all defendants except MCI."

clear. *Id.* at ¶ 70-71. Currier's other company, Communication Bridge USA, Inc. ("CBUSA"), was later formed as a subsidiary of CBG. *Id.* The complaint then describes a vast network of conspiracies involving the Philippine government, Currier's ex-wife, and the entire telecommunications industry, the goal of which was to prevent Currier's idea from coming to fruition, to destroy his companies, and to steal his intellectual property.

Four of the defendants have now brought motions to dismiss the Third Amended Complaint. They all contend that the complaint's lengthy and rambling allegations fail to comply with the minimal pleading standards established by the Federal Rules of Civil Procedure. The Court agrees.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . , (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed. R. Civ. P. 8(a). Under Rule 8(e), "each averment of a pleading shall be simple, concise, and direct." The purpose of these requirements is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957). In practical terms, the requirements of Rule 8 ensure that a defendant will be able to respond to the allegations against him. *Edwards v. N. Am. Rockwell Corp.*, 291 F. Supp. 199, 211 (C.D. Cal. 1968) ("Rule 8(a)(2) envisions the presentation of factual allegations of sufficient clarity and certainty to enable defendants to determine the basis of plaintiff's claim and to formulate a responsive pleading."). They also help frame the lawsuit to guide case management and discovery. *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).

## DISCUSSION

The Court finds that plaintiffs' complaint is not well-pled. Its convoluted allegations against a litany of defendants and "relevant non-parties," which span 81 pages and 409 paragraphs, are simply too confusing to give the defendants fair notice of the claims against them. Although the complaint provides a fair amount of detail concerning the telecommunications industry, the failure of the federal government to protect consumers from monopolies, and other "background" facts, the complaint fails to provide any detail when it discusses the

3

actual wrongs the named defendants allegedly committed. Instead, it resorts to sweeping, conclusory allegations of vast conspiracies. In short, the Ninth Circuit's description of a complaint in a similar case applies fully here: "Despite all the pages, requiring a great deal of time for perusal, one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *McHenry*, 84 F.3d at 1178.

Plaintiffs concede that the complaint is lengthy, but argue that the length is necessary because the factual background of this case is complicated. In defense of their complaint, plaintiffs cite to *Washington v. Baenziger*, 673 F. Supp. 1478 (N.D. Cal. 1987), and *Velasquez v. Senko*, 643 F. Supp. 1172 (N. D. Cal. 1986). Neither of these cases can save the current complaint.

*Washington* involved a professional baseball player who sued his investment advisor for fraud, negligence, and breach of fiduciary duty, among other claims. His original complaint was 86 pages long, contained 33 causes of action against 21 defendants, and attached fifteen pages of exhibits. *See Washington v. Baenziger*, 656 F. Supp. 1176, 1177 (N.D. Cal. 1987). After this complaint was dismissed under Rule 8(a), the plaintiff filed an amended complaint. In the amended complaint, the plaintiff "divided the defendants into relevant groups and specified the causes of action against each group. He also added dates to the allegations of fraud, and provided greater specificity to the alleged fraudulent acts of each defendant or group of defendants." *Washington*, 673 F. Supp. at 1482. Based upon these changes, the court held that the complaint complied not only with Rule 8(a), but also with the heightened pleading requirement of Rule 9(b). *Id.*

Unlike in *Washington*, plaintiffs here have not taken steps to clarify the allegations in their complaint. They have not "divided the defendants into relevant groups," nor have they "provided greater specificity to the alleged fraudulent acts." Rather, plaintiffs have continued to indiscriminately bring vague and conclusory allegations against the defendants as a single group.

Plaintiffs also cite *Velasquez v. Senko*, 643 F. Supp. 1172 (N. D. Cal. 1986), for the proposition that a complaint may include a great amount of detail and still be in compliance with Rule 8. *Velasquez* concerned a civil rights lawsuit against the Immigration and Naturalization Service, Border Patrol, and local police. *Id.* at 1174. The court rejected a motion to dismiss under Rule 8(a), finding that "the instant Complaint in no way

4

compares to . . . amorphous pleadings; it describes in considerable detail seven separate operations of the INS and Border Patrol that were allegedly planned or executed by certain of the defendants and that allegedly violated specified statutory and constitutional rights." *Id.* at 1178-79.

Plaintiffs' reference to *Velasquez* misses the deficiency in their complaint. Unlike the complaint in *Velasquez*, plaintiffs' complaint does not contain "considerable detail" about any of the charges against the defendants. The only details in the complaint are its juggling of myriad names as it describes – in almost no detail – the forty-six conspiracies it alleges. The substance of plaintiffs complaint consists of only conclusory allegations made with broad brushstrokes against the defendants. It is wholly lacking in the details that the parties, and the Court, need to understand the precise nature of the claims against the defendants.

As the following discussion demonstrates, none of the allegations against Holz, Demerly, Haas, or MetroFi suffices to provide them with fair notice of the claims against them.

### 1. **Claims against Otto Holz**

Plaintiffs' claims against Otto Holz do not satisfy the standard for notice pleading under Rule 8. The complaint contains twenty-one causes of action, nineteen of which are brought against "all defendants," including Holz. The charges against Holz are based upon the Sherman Act, the Clayton Antitrust Act, the California Cartwright Act, the Racketeer and Corrupt Organizations Act, and other California statutory and common law.

It is extremely difficult to divine the precise allegations that apply to Holz, however, because not a single one of plaintiffs' enumerated causes of action specifically mentions his name. In addition, many of plaintiffs' claims against Holz simply have no relation to the complaint's factual allegations against him. For example, the complaint alleges that Holz violated the antitrust laws, and breached written, oral, and implied contracts. *See, e.g.*, Pl. Compl. at ¶¶ 218-53, 313-35. Yet the factual allegations against Holz contain nothing that would support these claims.

The breadth of the complaint, along with its vague and conclusory allegations against Holz, simply do not provide Holz with proper notice of the charges against him.[3] For this reason, the Court GRANTS Holz's

---

[3] Holz makes much the same point in his opposition papers, at 4:8-10.

5

motion to dismiss.

### 2. Claims against Paul Demerly

For similar reasons, the Court GRANTS defendant Demerly's motion to dismiss. Plaintiffs' complaint specifically names Demerly in only three paragraphs:

> 31. Defendant PAUL DEMERLY ("DEMERLY") is a resident of California and a member of the Golden Gate University faculty and a participant with ROBERT CHOW in a fraud on the California Public Utilities Commission ("CPUC").
>
> * * *
>
> 103. A further distinct **Seventeenth (17th) RICO Conspiracy** committed by both of the CHOWs, the WONG FAMILY REVOCABLE TRUST, DEMERLY, SCHNEIDER, and SPOHN, involved fraud of the California Public Utilities Commission ("CPUC"), as documented then-CPUC staff lawyer, Carol Dumond and forensic auditor Kevin Nakamura. The fraud on the CPUC began in January of 2001, and was detected by the CPUC in the Chapter 11 proceedings, which CHOW and McINTOSH initiated by their False US Bankruptcy filing for CBUSA before Judge Montali.
>
> * * *
>
> 168. . . . CHO was a part of the RICO Conspiracy No. 17 to defraud the CPUC, along with DEMERLY, the named WONG defendants, and other on the Golden Gate University telco educational faculty, as well as key venture capitalist who Plaintiffs believe funded HAAS and METROFI with 150 million USD.

Pl. Compl. at ¶ 31, 103, 168.

From these bare allegations, plaintiffs bring nineteen causes of action against Demerly, none of which refer to him in any way. Plainly, these broad and conclusory allegations are insufficient to provide Demerly with notice of the charges against him. Thus, the Court GRANTS Demerly's motion to dismiss.

### 3. Claims against Chuck Haas and Metrofi

According to the complaint, Chuck Haas is "the founder of both defendant COVAD and defendant METROFI." Pl. Compl. at ¶ 20. The complaint describes MetroFi as "a Delaware corporation doing business in California, providing wireless telecom services." Pl. Compl. at ¶ 21.

The motion of these defendants presents a closer question than the motions of Holz and Demerly, because there are some allegations against Haas and MetroFi that are somewhat decipherable. Although the vast majority of references to Haas and MetroFi are only passing commentary, Paragraphs 115 and 180 appear to allege that MetroFi was established, with the help of Haas, as a vehicle to misappropriate intellectual

6

property that Currier had developed:

> 115. In May of 2002, the executive team of COVAD [which apparently includes Haas] continued in an ongoing continuity of conduct and action and executed **Rico Conspiracy Number Thirty (30)**, whereby they incorporated a new California corporation known as METROFI in order to execute the business plans, designs, and technical processes taught by CURRIER to CHOW, who in turn, illegally breached his (CHOW's) contract with Plaintiffs and divulged all this intellectual property of Plaintiffs to the COVAD executive team and operations groups, as a component to this conspiracy.
>
> * * * *
>
> 180. May of 2002, METROFI incorporated and sought to execute CBUSA and CBG's wireless VoIP [Voice over IP] design. CHOW was involved in the founding of METROFI to misappropriate the intellectual property of CBUSA, CBG, and CURRIER. HAAS, founder of COVAD, BROBECK, COVAD CO., COVAD, INC., FISH, SPOHN and LAZEROW were all similarly involved in the attempt to misappropriate the intellectual property of Plaintiffs, in continuity of ongoing acts from 1999 forward, which continues to this day, and included funding by SBC.

Pl. Compl. at ¶ 115, 180. In addition, plaintiffs' twelfth, thirteenth, fourteenth, and fifteenth causes of action explicitly name Haas and MetroFi. These causes of action all involve breach of contract or intentional interference with economic relationship, and all allege that "[t]hese breaches of contract were done at the direction and/or with the assistance of HAAS and METROFI."

Thus, in divining plaintiffs' claims against Haas and MetroFi, there is slightly more substance than in the case of Holz or Demerly. Nonetheless, "[t]he propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." *McHenry*, 84 F.3d at 1179. Dismissal under Rule 8 is not a commentary on the merits of a complaint, but a recognition of the practical necessities of litigation. As the Ninth Circuit noted in *McHenry*:

> The judge wastes half a day in chambers preparing the "short and plain statement" which Rule 8 obligated plaintiffs to submit. He must then manage the litigation without knowing what claims are made against whom. This leads to discovery disputes and lengthy trials, prejudicing litigants in other case [sic] who follow the rules, as well as defendants in the case in which the prolix pleading is filed.

*McHenry*, 84 F.3d at 1180. The complaint in *McHenry* was only fifty-three pages long, consisting, as does the complaint in this case, of "'narrative ramblings' and 'storytelling or political griping.'" *Id.* at 1176. Other courts have found similar complaints deserving of dismissal. *See, e.g.*, *Ciralsky v. CIA*, 355 F.3d 661, 669 (D.C. Cir. 2004) (district court's decision to strike a 119-page, 367-paragraph complaint was "hardly a harsh judgment," and district court did not err in dismissing 61-page, 105-paragraph first amended complaint); *Lonesome v. Lebedeff*, 141 F.R.D. 397 (E.D.N.Y. 1992) (dismissing 63-page, 452-paragraph complaint

7

under Rule 8).

The allegations plaintiffs seem to be bringing against Haas and MetroFi do not appear to be particularly complicated. They could have been brought in a far simpler complaint of much more limited scope. Instead, plaintiffs have chosen to bring those claims in a sweeping indictment of the global telecommunications industry and of the individuals against whom Currier appears to hold a grudge. Such pleading is simply not consistent with the requirements of the Federal Rules of Civil Procedure. *Cf. McHenry*, 84 F.3d at 1178 (expressing disapproval of complaint that seemed "designed to provide quotations for newspaper stories").

**4.     Leave to Amend**

Plaintiffs request leave to amend their complaint to correct the deficiencies identified by the Court. This action, however, has proceeded for over a year, and plaintiffs have already had four opportunities to submit an adequate complaint. It is abundantly clear to the Court that plaintiffs are not interested in formulating their claims in a simple, concise fashion. Rather, they are more interested in lengthy ramblings and conspiracy theories about all those who have wronged them in the past.

In this Court's August 9, 2005, order granting plaintiffs leave to file a third amended complaint, the Court explicitly informed plaintiffs that no further amendments would be allowed. Plaintiffs have given the Court no reason to depart from this decision. Thus, plaintiffs' request for leave to amend is DENIED.

///

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS Holz's, Demerly's, and Haas's and MetroFi's motions to dismiss with prejudice (Docket Nos. 194, 197, and 208).

**IT IS SO ORDERED.**

Dated: November 2, 2005

SUSAN ILLSTON
United States District Judge

9